UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

ROSCOE CHAMBERS,

    Plaintiff,

V.

DR. HARDY,

    Defendant.

Civil Action No. 6: 17-256-KKC

**MEMORANDUM OPINION AND ORDER**

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiff Roscoe Chambers is an inmate confined at the United States Penitentiary ("USP")- Lewisburg in Lewisburg, Pennsylvania. Proceeding without an attorney, Chambers has filed a civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). After Chambers' complaint was screened by the Court pursuant to 28 U.S.C. § 1915(e)(2), 1915A, the sole remaining claim pending in this case is a claim that Defendant Dr. William Hardy acted with deliberate indifference to Chambers' medical needs in violation of his constitutional rights while Chambers was confined at United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky. [R. 1, 14]

Dr. Hardy, through counsel, has filed a motion to dismiss or, in the alternative, motion for summary judgment, [R. 22] to which Chambers has filed a response. [R. 28] Dr. Hardy has not filed a reply and the time for doing so has expired. Thus, this matter has been fully briefed and is ripe for review.

**I.**

While the factual details provided in Chambers' complaint are sparse, he alleges that, while he was incarcerated at USP-McCreary, Dr. Hardy, identified as USP-McCreary's physician, operated on Chambers' foot without his permission and neglected to send Chambers

for knee replacement. [R. 1 at p. 3]. Based on these allegations, Chambers asserts a claim that Dr. Hardy acted with deliberate indifference to his medical needs in violation of the Eighth Amendment of the United States Constitution.

In his motion, Dr. Hardy argues that Chambers' complaint should be dismissed because: (1) Chambers has failed to exhaust his administrative remedies; (2) his complaint is untimely; (3) Chambers' complaint fails to allege a claim of constitutional dimension; and (4) Dr. Hardy is shielded from liability by qualified immunity. [R. 22-1]

**II.**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Chambers is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Here, Dr. Hardy moves both to dismiss and for summary judgment, attaching and relying upon declarations extrinsic to the pleadings in support of his motion. [R. 22] Thus, the Court will treat Dr. Hardy's motion to dismiss the complaint as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). *See also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

2

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Ford v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## A.

Chambers' complaint alleges that Dr. Hardy was deliberately indifferent to his serious medical needs in two respects: (1) he operated on Chambers' foot without his permission; and (2) he neglected to send Chambers for knee replacement. [R. 1 at p. 3]. However, with respect to his claim regarding the allegedly improper operation on his foot, Chambers did not properly and timely exhaust his administrative remedies as required by federal law. Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner wishing to challenge the circumstances or conditions of his confinement must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.");

3

*Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Campbell v. Barron*, 87 F. App'x 577, 577 (6th Cir. 2004). Administrative remedies must be exhausted prior to filing suit and in full conformity with the agency's claims processing rules. *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006).

The federal Bureau of Prisons ("BOP") employs a multi-tiered administrative grievance process. The BOP's Inmate Grievance System requires a federal prisoner to first seek informal resolution of any issue with staff. 28 C.F.R. § 542.13. If a matter cannot be resolved informally, the prisoner must file an Administrative Remedy Request Form (BP-9 Form) with the Warden, who has 20 days to respond. *See* 28 C.F.R. §§ 542.14(a) and 542.18. If the prisoner is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. If the prisoner is not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel, who has 40 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. *See also* BOP Program Statement 1300.16. Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules...," *Woodford*, 548 U.S. at 90, the prisoner must file the initial grievance and any appeals within these time frames.

Here, even according to Chambers, the only administrative remedy requests relevant to this lawsuit that he completely exhausted are Administrative Remedy Nos. 849291 and 854754. [R. 28, Resp. at p. 3; R. 22-2, Exh. 1: Decl. of Carlos Martinez, Attachments D and E, at p. 84-97]. However, both of these administrative remedy requests relate to the allegedly inadequate medical treatment provided for Chambers' knees. Neither of these administrative remedy requests even mention treatment of Chambers' foot. [*Id.*]

Rather, Chambers' allegations that Dr. Hardy inappropriately operated on his foot (including his allegation that he "cut a bone off the bottom of my feet and left the top part inside

4

my feet") are raised only in Administrative Remedy No. 857566. [R. 22-2, Decl. of Carlos Martinez, Attachment F, at p. 98-102] Chambers filed an administrative remedy request complaining of the procedure on his foot on a BP-9 Form (which was later assigned as Administrative Remedy No. 857566) on March 31, 2016. [*Id*. at p. 98]. The Warden responded to the request, explaining that a review of Chambers' medical records showed that, after obtaining verbal informed consent for incision and drainage of Chambers' right foot, Dr. Hardy "excised a dead cornified piece of skin from your foot, not bone. This is secondary to a plantars wart." [*Id*. at p. 99] The Warden further informed Chambers that, if he was dissatisfied with his response, he may appeal to the Regional Director. [*Id*.]

Chambers filed a BP-10 appeal with the Mid-Atlantic Regional Office on April 26, 2016. [*Id*. at 100] The Regional Director issued a response denying the appeal dated April 29, 2016. [*Id*. at 101-102] Although this response also advised Chambers how to appeal at the Central Office level [*id*.], Chambers did not pursue Administrative Remedy No. 857566 any further. [R. 22-2, Decl. of Carlos Martinez, Attachment F, at p. 98-102] Thus, Chambers failed to fully exhaust his administrative remedies with respect to his Eighth Amendment claim related to Dr. Hardy's treatment of his foot.

In his response, with respect to the exhaustion of his available administrative remedies, Chambers offers only his statement that he "attempted to exhaust" Remedy No. 857566 [R. 28 at p. 3, ¶4], later claiming that "he filed a BP-11 and never heard any response to it." [*Id*. at p. 4, ¶7] However, Chambers provides no factual or evidentiary support for this claim, only his own unsupported and self-serving allegations made in his response. In order to defeat a properly supported motion for summary judgment, the party opposing the motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). "[C]onclusory

5

allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). *See also Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 325 n. 1 (6th Cir. 1988) ("[A] motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues."); *Perry v. Agric. Dep't*, No. 6: 14-168-DCR, 2016 WL 817127, at *10 (E.D. Ky. Feb. 29, 2016) ("[C]onclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment.").

Here, in response to Dr. Hardy's motion supported by evidence that Chambers did not fully exhaust Administrative Remedy No. 857566 [R. 22-2, Exh. 1: Decl. of Carlos Martinez, Attachments C and F], Chambers offers only his own, unsupported claim that he "attempted" to fully exhaust this claim by filing a BP-11, "but never heard any response on it." [R. 28 at p. 4, ¶7] This self-serving statement is insufficient to create a genuine issue of material fact with respect to Chambers' failure to exhaust Administrative Remedy No. 857566, the only administrative remedy request that Chambers filed with respect to Dr. Hardy's treatment of his foot.[1] Because Chambers failed to fully exhaust his administrative remedies with respect to this claim, he did not satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a) prior to filing his complaint, thus this claim must be dismissed. *Liggett v. Mansfield*, 2009 WL 1392604, at *2-3 (E.D. Tenn. May 15, 2009) ("A prisoner who files a grievance but does not appeal to the highest

---

[1] Although Chambers filed another administrative remedy request on January 22, 2016 (later assigned Administrative Remedy No. 849290), this remedy request complained of "Ms. J. West improper conduct" and requested "to see the health-care physician concerning my knee problems and my feet problem." [R. 28-1 at p. 3] However, not only did this remedy request fail to make any reference to Dr. Hardy's treatment of Chambers, but Chambers also failed to pursue this Administrative Remedy beyond the Regional level. [R. 22-2, Exh. 1: Decl. of Carlos Martinez at p. 2-3; *Id.* at Attachment C]

possible administrative level, does not exhaust available administrative remedies.") (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)).

B.

With respect to the basis for Chambers' remaining Eighth Amendment claim against Dr. Hardy – that Dr. Hardy acted with deliberate indifference to Chambers' serious medical needs by neglecting to send Chambers for knee replacement – this claim must be dismissed as untimely. Because the remedy afforded in a *Bivens* action is entirely judge-made, there is no statutory limitations period. Instead, federal courts apply the most analogous statute of limitations from the state where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). The medical care about which Chambers now complains occurred in Kentucky; therefore, Kentucky's one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 501 (6th Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003).

A claim accrues when the plaintiff becomes aware of the injury which forms the basis for his claims. *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 393-94 (6th Cir. 2015) ("Once the plaintiff knows he has been hurt and who has inflicted the injury, the claim accrues.") (internal quotation marks omitted) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Here, Chambers alleges that Dr. Hardy acted with deliberate indifference when he neglected to refer Chambers for a total knee replacement after a medical examination on November 18, 2015. [R. 1 at p. 3; R. 22-2, Exh. 1: Decl. of Carlos Martinez at p. 2-3; *Id.* at Attachments D and E] Where, as here, the operative facts are not in dispute, the Court determines as a matter of law whether the statute of limitations has expired. *Highland Park Ass'n of Businesses & Enterprises v. Abramson*, 91 F.3d 143 (Table) (6th Cir. 1996) (citing *Hall v. Musgrave,* 517 F.2d 1163, 1164 (6th Cir.1975)). *See also Fox v. DeSoto*, 489 F.3d 227, 232 (6th Cir. 2007).

7

Because Chambers undoubtedly became aware of the denial of his request for knee replacement on November 18, 2015 when he was informed that he did not meet the criteria for knee replacement, his claim accrued (and the statute of limitations with respect to this claim began running) on this date. Thus, Chambers had one year from that date – or until November 18, 2016 – to file his complaint. However, as noted above, before he could file suit, Chambers was required to exhaust his administrative remedies available under the BOP's Inmate Grievance Program. 42 U.S.C. § 1997e(a). When a claimant is required to exhaust such remedies before bringing suit, the limitations period is tolled while he or she does so, as long as such remedies are pursued diligently and in good faith. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

Assuming (without deciding) that Chambers pursued his remedies diligently and in good faith, according to Chambers, the fully exhausted administrative remedy requests that relate to his claim regarding his knee replacement request are Administrative Remedy No. 849291 (which was filed at USP-McCreary on January 22, 2016) and Administrative Remedy No. 854754 (which was filed at USP-McCreary on March 3, 2016). [R. 28 at p. 3, ¶3; R. 22-2, Exh. 1: Decl. of Carlos Martinez at Attachments D and E][2] The Central Office denied Chambers' appeal of Administrative Remedy No. 849291 on April 26, 2016 and denied his appeal of Administrative Remedy No. 854754 on June 7, 2016. [*Id.*]

Thus, even if the statute of limitations was tolled for the entire time period that Chambers pursued these administrative remedies from January 22, 2016 through June 7, 2016

---

[2] It should be noted that, to the extent that Chambers alleges in his response to Dr. Hardy's motion that Dr. Hardy also failed to treat a "broken bone" in his knee resulting from separate staff assaults on Chambers on May 16, 2016 and June 29, 2016, there are no allegations of this nature in his complaint and he may not simply add new substantive claims in his response to a dispositive motion. Nor are these claims raised in any of the administrative remedy requests relevant to the claims in his complaint. Indeed, both of these incidents occurred well after the date that Chambers began pursuing his administrative remedies with respect to the one claim related to his knee that he did allege in his complaint, which was Dr. Hardy's failure to refer Chambers for a knee replacement after the examination in November 2015.

(or approximately 138 days), the limitations on his claim expired on or around April 3, 2017.[3] However, he did not file this lawsuit in this Court until September 18, 2017.[4] Thus, because Chambers filed his lawsuit well over five months after the statute of limitations with respect to his claim had expired, his claim is barred by the applicable statute of limitations and must be dismissed. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

**C.**

Even putting aside the procedural deficiencies of Chambers' claims, Chambers fails to state a viable claim for violation of the Eighth Amendment. The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim. *Jones v. Muskegon Co.*, 625 F. 3d 935, 941 (6th Cir. 2010). The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective component requires the plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health

---

[3] Approximately 65 days passed between the date Chambers claim accrued on November 18, 2015, and the date he filed his first administrative remedy on January 22, 2016. If the "clock is stopped" until the administrative remedy process was completed on June 7, 2016, Chambers had 300 days remaining (or until April 3, 2017) within which to file his claim.

[4] While he originally attempted to bring this claim against Dr. Hardy in a civil lawsuit filed in the United States District Court for the Central District of California, Chambers filed that lawsuit on August 21, 2017, which was also after the expiration of the statute of limitations. *Roscoe Chambers v. Dr. Allen, et al.*, No. 5:17-cv-01353-MWF (KES) (C.D. Cal.). After finding that it did not have personal jurisdiction over the defendants in Kentucky for actions occurring in Kentucky, the District Court in California dismissed Chambers' claim against Dr. Hardy without prejudice to his ability to refile those claims here. *Id.*

but consciously disregarded it. *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F. 3d 125, 128 (6th Cir. 1994).

Even assuming that Chambers could satisfy the objective component, the subjective component requires a showing that Dr. Hardy was aware of Chambers' medical conditions yet, through his actions, chose to consciously and deliberately disregard a serious risk to his health, a much more demanding standard. *Farmer*, 511 U.S. at 834; *Arnett v. Webster*, 658 F. 3d 742, 751 (7th Cir. 2011) ("Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'") (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). Dr. Hardy has provided extensive medical records documenting that, while Chambers was housed at USP-McCreary, he received comprehensive examinations and extensive treatment for his knees and an infected plantar wart on his foot (which Chambers repeatedly mischaracterizes as a "bone growing out of his foot," citing no evidence supporting this characterization other than his own opinion). [R. 22-6 (Corrected R. 22-3), Exh. 2 Declaration of Dr. William Hardy and supporting medical records] Moreover, Dr. Hardy has submitted evidence that, despite Chambers' claim to the contrary, Chambers verbally consented to the procedure on his foot, then refused to sign the consent form after the procedure had concluded. [*Id.* at Exh. 2, Declaration of Dr. William Hardy, p. 5] Chambers then refused to attend an off-site evaluation by a podiatrist, a medical doctor devoted to the study and medical treatment of disorders of the foot, ankle and lower extremity. [*Id.* at p. 7]

In response, Chambers offers no affirmative evidence to the contrary, but rather only his own self-serving statements that he did not grant permission for the procedure on his foot and continues to question why he would have needed to see a podiatrist. However, despite Chambers' repeated statements that Dr. Hardy operated on his foot without his permission, it is clear that the gist of his complaint is actually based on his disagreement with Dr. Hardy's

alleged failure to send what Chambers characterizes as a foreign object to a lab to have a biopsy or to send Chambers to a hospital to have the rest of the allegedly foreign object removed. [R. 28 at p. 7, ¶20] Chambers also does not dispute that he received medical treatment from Dr. Hardy, nor could he, as the extensive documentation submitted by Dr. Hardy clearly demonstrates that Chambers received treatment for both his foot and knee conditions from Dr. Hardy. Rather, Chambers makes it quite clear that his disagreement is with the medical decisions made by Dr. Hardy during the course of Chambers' treatment. [R. 28 at p. 15, ¶7 ("Let say next an ulcer in part of the foot, that would be the bone growth growing out of the bottom of Chambers feet, in which the different cut part off and just discarded without at least sending it to the lab for a biopsy."); *Id*. at p. 15, ¶8 ("Misleading Chambers saying your too young for a total knee replacement, how old do you have to be? Chambers was 43 or 44 years old."). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)

Simply put, the facts here are insufficient to support a claim of deliberate indifference to Chambers' serious medical needs. Where a prisoner has been examined and treatment provided but the prisoner merely disagrees with the course of care determined by his treating physician in the exercise of his medical judgment, his claim sounds in state tort law – it does not state a viable claim of deliberate indifference under the Eighth Amendment. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*

11

*v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001). A prisoner's "disagreement with the exhaustive testing and treatment he received while incarcerated does not constitute an Eighth Amendment violation." *Lyons v. Brandy*, 430 F. App'x 377, 381 (6th Cir. 2011) (citing *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see also Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.").

In sum, Chambers' disagreement with Dr. Hardy regarding the best course of medical treatment for his feet and knees is insufficient to state a claim of deliberate indifference under the Eighth Amendment. Thus, Chambers' complaint fails to state a claim for violation of the Eighth Amendment.

**D.**

Finally, Dr. Hardy argues that, as no constitutional violation has occurred, he is entitled to qualified immunity from suit. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When evaluating official immunity claims, the Sixth Circuit applies the following three-part test: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(citation omitted).

The Court has concluded above that no Eighth Amendment violations occurred. Thus, Dr. Hardy is entitled to and shielded by qualified immunity.

For all of these reasons, the Defendant's motion to dismiss, or in the alternative, motion for summary judgment will be granted and Chambers' complaint will be dismissed.

Accordingly, **IT IS ORDERED** that:

1. Defendant Dr. Hardy's motion to dismiss, or in the alternative, motion for summary judgment [R. 22] is **GRANTED**.
2. Chambers' complaint [R. 1] is **DISMISSED WITH PREJUDICE**.
3. All pending motions or requests for relief in this case are **DENIED AS MOOT**.
4. This action is **STRICKEN** from the Court's active docket.
5. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

Dated February 20, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY